IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| MELODY H. COTNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:11-CV-299 |
| ) | |
| BUFFALOE & ASSOCIATES, PLC, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This Fair Debt Collection Practices Act ("FDCPA") case is before the court on plaintiff's motion for costs and attorney fees [doc. 19]. Defendant has responded in partial opposition [doc. 21], and plaintiff has submitted a reply [doc. 25]. For the reasons that follow, plaintiff's motion will be granted in part.

I.

*Background*

Plaintiff filed her complaint on June 28, 2011, alleging multiple violations of the FDCPA stemming from a single collection letter sent to her by defendant. On August 19, 2011, defendant filed a motion to dismiss. In response, plaintiff filed an amended complaint which was answered by the defendant on October 13, 2011. The court conducted a telephonic scheduling conference on December 5, 2011.

Two days later, defendant served an offer of judgment pursuant to Federal Rule of Civil Procedure 68. On December 27, 2011, plaintiff filed a notice of acceptance of the offer of judgment. In material part, defendant's offer was

> to pay a total of $1,001.00 plus reasonable costs, including attorney's fees, in connection with Plaintiff's claims under the FDCPA and said fees and costs are to be in an amount as agreed to between the parties or, if they are unable to agree, as determined by the Court upon motion.

The parties were unable to agree on reasonable costs and attorney fees, and plaintiff filed the instant motion on January 27, 2012.

II

*Relevant Authority*

The FDCPA provides in material part that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable [for] . . . the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In determining what fee is reasonable, the court must begin its analysis with what is termed the "lodestar" - reasonable hours multiplied by a reasonable rate. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433.

2

"The amount of the fee, of course, must be determined on the facts of each case." *Id.* at 429. The *Hensley* Court identified 12 factors relevant both to the determination of the lodestar and to any subsequent upward or downward adjustments that might be necessary. *Id.* at 430 n.3, 434 n.9. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n.3.

"A request for attorney's fees should not result in a second major litigation." *Id.* at 437. In *Coulter v. Tennessee*, the Sixth Circuit Court of Appeals discussed the Congressional intent underlying more than 130 attorney fee-shifting statutes, including the FDCPA. 805 F.2d 146, 148-49 n.2, 153 (6th Cir. 1986).

> Congress intended to provide an economic incentive for the legal profession to try meritorious cases defining and enforcing statutory policies and constitutional rights in a variety of fields of legal practice. Congress did not intend that lawyers, already a relatively well off professional class, receive excess compensation or incentives beyond the amount necessary to cause competent legal work to be performed in these fields. Legislative history speaks of "fees which are adequate to attract competent counsel, but which do not produce windfalls," . . . and cautions against allowing the statute to be used as a "relief fund for lawyers" . . . .

*Id.* at 148-49 (citations omitted). In other words, courts should be mindful of cases in which attorney fees are "the engine . . . powering the case," *Carroll v. United Compucred*

3

*Collections*, No. 1:99-00152, 2008 WL 3001595, at *4 n.4 (M.D. Tenn. July 31, 2008), and "the fee petition tail should not be allowed to wag the dog." *Career Agents Network v. careeragentsnetwork.biz*, 722 F. Supp. 2d 814, 825 (E.D. Mich. 2010).

Further, "hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter*, 805 F.2d at 149. The relevant market is the venue in which the court sits. *See Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

### III.

### *Attorney Fees*

Based on an desired hourly rate of $275.00, plaintiff seeks attorney fees in the amount of $7,232.50, along with $356.43 in costs. Plaintiff's counsel has submitted a billing statement which lists 16.3 hours through the date of acceptance of the offer of judgment, and 5.5 subsequent hours in pursuit of attorney fees. The billing statement goes only through January 26, 2012, and clearly does not document all hours expended in the fee litigation. No paralegal or legal assistant work is shown. The court will now consider plaintiff's fee request in light of the 12 *Hensley* factors.

### A. Time and Labor Required

The court first notes that this case settled relatively early. Plaintiff's attorney lists a more than eight hours for preparing the initial complaint, reviewing the motion to dismiss, and preparing the amended complaint. It would appear that the initial complaint was

4

in some ways deficient, as it was met with a motion to dismiss which in turn brought about the amended complaint. On the facts of the present case, it would be unreasonable and excessive to require the defendant to pay for more than eight hours of attorney time for the above-cited filings. The court will accordingly reduce by two the hours billed through the date of acceptance of the offer of judgment, from 16.3 down to 14.3.

Next, the court is concerned that it appears from plaintiff's billing statement that no work was done on this case by support staff. The three most troubling billing entries by the attorney are as follows: "Drafted Client Contact and Intake Info" (0.5 hours); "Summons and Complaint to be sent by Certified Mail, Certified Mail Docs" (0.3 hours); and "Reviewed Certified Mail return, scanned to file" (0.1 hours).

The record indicates that plaintiff's counsel is a solo practitioner, but the court has no information regarding the size of his support staff. The court cannot imagine that plaintiff's counsel has no staff whatsoever. Regardless, the three billing entries cited immediately above are purely administrative tasks. It would be unreasonable to bill the defendant at attorney rates for the performance of that work. Plaintiff has not documented any support staff billing in this case (or explained the absence thereof), and it is her burden to document "the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. The 0.9 hours billed at attorney rates for the obvious performance of administrative tasks will be stricken entirely, further reducing the hours billed through the

5

date of acceptance of the offer of judgment from 14.3 down to 13.4.

Other billing entries in this case appear to be a hybrid of lawyer and administrative work. Those entries will be discussed further below.

### B. Novelty and Difficulty of the Questions Presented

The court again notes that this case settled relatively early. As such, it is impossible for the court to know whether novel and/or difficult issues were presented. This factor therefore does not weigh in favor of either party.[1]

### C. Skill Required to Perform the Legal Service Properly

The court recognizes that the FDCPA is a specialized area of the law. Conversely, the court again notes that the offer of judgment was served a mere two days after the scheduling conference, meaning that the case never reached any complicated stage of litigation. The court finds that the "skill required" factor does not significantly weigh in favor of either party.

### D. Preclusion of Employment by the Attorney Due to Acceptance of This Case

Plaintiff's counsel makes no argument that other clients were turned away due to the acceptance of this case. The court finds that the "preclusion" factor has no bearing on this matter.

---

[1] As noted above, defendant filed a motion to dismiss. However, because plaintiff's amended complaint mooted that motion [doc. 11], the court was not required to conduct any analysis of the issues contained therein.

6

### E. The Customary Fee

Again, the "customary fee" must be based on the market in which the court sits. *See Adcock-Ladd*, 227 F.3d at 350. Plaintiff's counsel states that he charges a fixed rate of $225.00 per hour and that his contingency fee rates have recently increased from $275.00 per hour (2011) to $325.00 per hour (2012). He claims that in 2010 he received an FDCPA fee award based on a rate of $250.00 per hour. He also cites the court to a 2009 ERISA case from the Chattanooga division in which the court found reasonable an undisputed hourly rate of $250.00 (in favor of a lawyer not involved in the present case). *See McKay v. Reliance Standard Life Ins.*, 654 F. Supp. 2d 731, 739-40 (E.D. Tenn. 2009).

### F. Fixed or Contingent Fee

Counsel's representation of plaintiff in this case is on a contingency fee basis. As such, his compensation will come from the amount determined by the court.

### G. Time Limits Imposed by the Client or the Circumstances

Plaintiff's counsel makes no argument that unusual time limitations were imposed by his client or by the circumstances of this case. The court finds that the "time limits" factor has no bearing on this matter.

### H. The Amount Involved and the Results Obtained

Plaintiff prevailed on her claim against the defendant. She points out that she settled the case for $1.00 more than the statutory damage cap. *See* 15 U.S.C. § 1692k(a)(2)(A).

The *Hensley* Court made clear that the degree of success achieved is "the most critical factor." *Hensley*, 461 U.S. at 436. However, attorney fees should not be limited by the relatively minor sum ($1,001.00) recovered by the plaintiff. *See Purtle v. Eldridge Auto Sales*, 91 F.3d 797, 802 (6th Cir. 1996).

### I. Experience, Reputation, and Ability of the Attorney

Plaintiff's counsel has practiced consumer bankruptcy law for almost 20 years. According to his declaration, he has favorably settled at least 140 FDCPA cases. Defendant does not contest that plaintiff is represented by an experienced and competent FDCPA practitioner. This factor therefore weighs somewhat in plaintiff's favor.

### J. Undesirability of the Case

To the extent that plaintiff's counsel would argue that FDCPA cases are "undesirable," the court notes a *dramatic* increase in the number of FDCPA filings on its docket in the last year. The court further notes the attachments to defendant's response brief. Those attachment are advertisements for the "FDCPA Boot Camp," a weekend seminar for which plaintiff's attorney provides a testimonial. [Doc. 21, ex. 2].

According to the advertisement, the FDCPA Boot Camp is designed "to make your existing FDCPA practice shine. The boot camp is centered on two simple, [sic] concepts: *Every collection account is destined to become an FDCPA claim; and, every FDCPA claim is destined to become a better FDCPA claim.*" [Doc. 21, ex. 1] (emphasis in original). One attendee reports that the boot camp had "already paid for itself several times

8

over in fees earned." [Doc. 21, ex. 2]. Based on the above, the court cannot conclude that FDCPA cases are "undesirable."

K. <u>Nature and Length of the Professional Relationship with the Client</u>

Nothing in the record indicates that the professional relationship with plaintiff was extraordinarily lengthy or involved. This factor has no bearing herein.

L. <u>Awards in Similar Cases</u>

"Rates from prior cases can . . . provide some inferential evidence of what a market rate is . . . but themselves do not set the rate." *B&G Mining v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008). As noted above, plaintiff's counsel claims to have been awarded an FDCPA fee in 2010 based on a rate of $250.00 per hour, and he also cites a 2009 ERISA case from the Chattanooga division in which the court approved an uncontested hourly rate of $250.00 for an attorney other than him. *See McKay*, 654 F. Supp. at 739-40. Neither party, however, directs the court's attention to any recent case in which an FDCPA lodestar has been *litigated* in this district, and the court's research has uncovered none.

For comparison purposes, the court's research reveals the following recent fee cases in this district, none of which involve a disputed FDCPA hourly rate:

> 1. *Williams v. Portfolio Recovery Assocs.*, No. 1:11-CV-156, an FDCPA case from the Chattanooga division in which the parties agreed (in early 2012) to fee rates of $192.00 per hour for associates and $270.00 per hour for partners (in a case not involving the present attorney).

9

2. *Hance v. Norfolk S. Ry.*, 3:04-CV-160, 2007 WL 3046355, at *3 (E.D. Tenn. Oct. 16, 2007), a *civil rights* case from the Knoxville division in which Judge Phillips and Magistrate Judge Guyton determined that a rate of $250.00 per hour was reasonable on the facts of that case.

3. *Doherty v. Maryville*, No. 3:07-CV-157, slip op. at 13 (E.D. Tenn. Sept. 30, 2009), a *civil rights* case from the Knoxville division in which Judge Varlan determined that rates of $175.00 per hour for associates and $225.00 per hour for partners were reasonable.

4. *Brooks v. Invista*, 528 F. Supp. 2d 785, 790 (E.D. Tenn. 2007), a *civil rights* case from the Chattanooga division in which Chief Judge Collier determined that an hourly rate of $239.50 was reasonable "in [that] type of case."

Due to the paucity of authority regarding local FDCPA fee litigation, most of the cases cited herein have been ERISA or civil rights matters. It is the court's experience that FDCPA cases are not as complex or as conceptually difficult as those brought under ERISA or the civil rights laws. *See, e.g., Hensley*, 461 U.S. at 436 ("[C]omplex civil rights litigation involv[es] numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services.").

The court simply cannot conclude that FDCPA fee rates should be as high as rates approved in ERISA or civil rights cases. Based on the limited evidence and authority presented in *this* case, and having considered the twelve factors set forth in *Hensley*, the court concludes that an hourly attorney fee range of $175.00 to $225.00 is appropriate.

## M. Conclusion

In determining the reasonable rate to be awarded in this case, the court has again considered the 12 *Hensley* factors as discussed above. On the facts of this particular

10

case, the most striking issue is the apparent billing at "lawyer rates" for tasks that are administrative in nature.

The court has already deleted 0.9 hours of sought-after *attorney* fees for the performance of work that plaintiff's billing statement shows to have been clearly administrative. The court now further observes that the line between lawyer and administrative tasks is less clear in other entries on plaintiff's billing statement. As but one example, for December 5, 2011, plaintiff seeks $275.00 per hour attorney fees not only for the "lawyer task" of participating in the scheduling conference but also for the administrative work of entering dates on a calendar.

It is not the court's intention to dismiss or ignore the realities of the solo practitioner. Nonetheless, it is unreasonable to expect an opposing party to pay top-of-the-market attorney rates for work that is all or part administrative. Considering the time entries discussed herein, the court is not confident that counsel's other entries do not also have an undue administrative component. Again, it is plaintiff's burden to document "the appropriate hours expended and hourly rates," *Hensley*, 461 U.S. at 437, and she has not done so in this case. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433.

For all the reasons discussed herein, the court concludes that $175.00 per hour is a reasonable rate for the attorney work done in this case. That rate will be multiplied by the reasonable number of hours billed through the date of acceptance of the offer of

11

judgment, which is 13.4. Accordingly, plaintiff will be awarded $2,345.00 in attorney fees through the date of the acceptance of the offer of judgment.

IV.

*"Fees for Fees"*

When parties litigate the issue of attorney fees, the additional fees generated by that litigation are termed "fees for fees." *See, e.g., Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 502 (6th Cir. 2006). Fees for fees are recoverable, but not without limitation. *See Coulter v. Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986). In *Coulter*, the Sixth Circuit provided the following "guidelines and limitations":

> In the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary. Such guidelines and limitations are necessary to insure that the compensation from the attorney fee case will not be out of proportion to the main case and encourage protracted litigation.

*Id.*

Inexplicably, neither party in this case cited the court to the binding authority of *Coulter*. Defendant has instead cited *Young v. Diversified Consultants*, 554 F. Supp. 2d 954 (D. Minn. 2008), for the proposition that fees on fees are not available. *Young* is wholly distinguishable. In *Young*, the offer of judgment was expressly limited to fees and costs incurred "through the date of Plaintiff's counsel's receipt of service of this Offer." *Id.* at 957. No such restriction is present in the offer of judgment in this case.

12

Returning to *Coulter*, "unusual circumstances" warranting a departure from the Sixth Circuit's binding "guidelines and limitations" are found, for example, where a case involves otherwise noncompensable work at the administrative level, or where fee litigation is protracted by the opposing party's "insincere" tactics. *See Moore v. Crestwood Local Sch. Dist.*, 804 F. Supp. 960, 969-70 (N.D. Ohio 1992). The court finds no unusual circumstances present in this case.[2] The court concludes that plaintiff is entitled to "fees for fees" in the amount of $70.35 ($175.00 hourly rate, multiplied by 13.4 hours in the main case, multiplied by 3%).

V.

*Costs*

Plaintiff seeks $356.43 in costs. Of that amount, $350.00 is the filing fee paid to this court, and $6.43 is the cost of service of the complaint.

Defendant concedes that plaintiff is entitled to her filing fee, but contests reimbursement of the cost of service. Defendant, however, offers no argumentation on that point. The issue is according waived, and plaintiff will be awarded the full amount of costs requested.

---

[2] If anything, the court considered a *downward* adjustment for plaintiff's failure to acknowledge *Coulter*.

13

## VI.

*Conclusion*

For the reasons provided herein, plaintiff's motion for attorney fees and costs [doc. 19] is **GRANTED IN PART**. Plaintiff will be awarded reasonable attorney fees in the amount of $2,415.35, and costs in the amount of $356.43. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
   United States District Judge